IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM ZUCK, | ) | 4:12CV3252 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MARIO PEART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff filed his Complaint in this matter on December 19, 2012. (Filing No. 1.) The court has given Plaintiff leave to proceed in forma pauperis. (Filing No. 9.) The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A. The court will also address Plaintiff's Motion to Appoint Counsel, Motion for Discovery, and Motion for Preliminary Injunction.

## I. SUMMARY OF COMPLAINT

Plaintiff is currently incarcerated at the Lincoln Correctional Center ("LCC"). (*See* Docket Sheet.) He filed his Complaint against numerous current and former employees of the LCC and the Nebraska Department of Correctional Services ("NDCS"). (Filing No. 1 at CM/ECF p. 1.) He has also sued four companies that supply food products to the LCC, including Keefe Group, H.J. Heinz Co., L.P., Carriage House Companies, Inc., and Portion Pac, Inc. (*Id.* at CM/ECF p. 4.) Plaintiff's Complaint and its attached documentation totals 308 pages. Condensed and summarized, Plaintiff alleges that Defendants have violated his religious rights in violation of the First and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (*Id.* at CM/ECF pp. 23-28.) He also alleges that Defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.*)

A.  **Plaintiff's Sincerely Held Religious Beliefs**

Plaintiff is a member of The Church of Jesus Christ of Latter-day Saints. Plaintiff states that his religious dietary requirements are set forth in a document attached to his Complaint entitled "Word of Wisdom Religious Diet Needs" (hereinafter referred to as "the Word of Wisdom"). (*See* Filing No. 1-1 at CM/ECF p. 14.) Plaintiff states that the Word of Wisdom is his interpretation of his religion's dietary guidelines. (Filing No. 1-4 at CM/ECF p. 130.) As set forth in the Word of Wisdom, Plaintiff is forbidden from consuming alcohol, tobacco, tea, and coffee. (Filing No. 1-1 at CM/ECF p. 14.) The Word of Wisdom also states that "[a]nything harmful that people purposefully take into their bodies is not in harmony with the Word of Wisdom." (*Id.*) Though not specifically set forth in the Word of Wisdom document, Plaintiff states in the body of his Complaint that foods that make him "feel sick and/or drugged" violate the Word of Wisdom. (*See generally* Filing No. 1.) Plaintiff determines whether a food contains something "harmful," in violation of the Word of Wisdom, by using his past experiences and his senses of smell, taste, and sight. (Filing No. 1-4 at CM/ECF p. 131.)

Plaintiff also alleges that fasting is one of his religious dietary requirements. (Filing No. 1 at CM/ECF p. 7.) Plaintiff states he must fast one Sunday per month for two consecutive meals. (*Id.*)

B.  **Factual Allegations**

1.  **Fasting Meal**

Plaintiff alleges he has filed numerous grievances asking to be provided additional food on the evening of the one Sunday per month. He also submitted a proposal to the prison's religious study committee asking for the additional food. The response from prison officials was that the NDCS legal department determined that Plaintiff would not be provided additional food on the one day per month he chooses

to fast. (Filing No. 1 at CM/ECF pp. 1-9.) Plaintiff alleges that these actions violate his rights under RLUIPA and the First and Fourteenth Amendments. (*Id.* at CM/ECF pp. 24-28.)

### 2. Canteen Items

Plaintiff alleges that he initiated numerous grievances asking prison officials to inform him of which canteen items he may consume in accordance with the Word of Wisdom. (*Id.* at CM/ECF p. 9.) Prison officials have refused. Rather, they have instructed him to (1) review the canteen list and decide what he may eat, (2) work with the religious coordinator, and (3) exercise his judgment in deciding which foods he can eat "because interpretations of the foods allowed or prohibited by Word of Wisdom vary." (*Id.* at CM/ECF pp. 9-11; *see also* Filing No. 1-4 at CM/ECF pp. 21-25.)

Plaintiff alleges that Keefe Group and other food companies supply food to the prison's canteen, and some of the food's ingredients violate the Word of Wisdom. (Filing No. 1 at CM/ECF p. 10.) He also alleges that food he purchases from the canteen has the tendency to make him feel "sick and/or drugged" in violation of the Word of Wisdom. (*Id.*) Plaintiff alleges that Defendants' actions violate his rights under RLUIPA and the First and Fourteenth Amendments. (*Id.* at CM/ECF pp. 24-28.)

### 3. LCC Menu Items

Plaintiff alleges that he has initiated numerous grievances asking to be notified in advance of what menu items violate the Word of Wisdom. Defendants have refused to give him this information. Instead, they have instructed him to review the posted menus to determine which foods meet his religious diet restrictions. (*Id.* at CM/ECF p. 11.) Plaintiff alleges that many of the menu items make him feel "sick and/or drugged" in violation of the Word of Wisdom. In addition, he alleges that he

is not receiving adequate nutrition and, as a result, he has lost in excess of 60 pounds in the last five years. (*Id.* at CM/ECF pp. 20-21.) Plaintiff alleges that Defendants' actions violate his rights under the First, Eighth, and Fourteenth Amendments, and RLUIPA.

### 4. Religious Diet Proposal

Plaintiff alleges that he submitted a Word of Wisdom religious diet proposal to the prison's religious study committee. (*Id.* at CM/ECF p. 12; proposal at Filing No. 1-4 at CM/ECF p. 34.) The committee rejected his proposal because, according to the prison's religious coordinator, Plaintiff is able to comply with his religion's diet by simply refraining from drinking tea and coffee, and he is able to meet his daily nutritional needs even if he avoids drinking tea and coffee. (*See id.* at CM/ECF p. 35.) Plaintiff alleges that Defendants' actions violate his rights under RLUIPA and the First and Fourteenth Amendments. (*Id.* at CM/ECF pp. 24-28.)

## C. Demand for Relief

As relief, Plaintiff seeks an unspecified amount of monetary damages. In addition, he asks the court to order prison officials to: (1) serve him only alternative foods from companies that provide "food storage meals" that do not violate the Word of Wisdom; (2) never sell him products from the canteen that violate the Word of Wisdom; (3) label all food items that comply with the Word of Wisdom; (4) create an official Word of Wisdom religious diet; and (5) provide him with additional food at the evening meal on the one Sunday per month he chooses to fast. (Filing No. 1 at CM/ECF pp. 28-32.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e)(2). The court

must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 70 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. Burke v. North Dakota Dep't of Corr. & Rehab., 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

### III.  DISCUSSION OF CLAIMS

**A.  Claims for Monetary Relief and Official Capacity Claims**

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. See, e.g., Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. See, e.g., id.; Nevels v. Hanlon, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

Plaintiff has sued numerous state employees in their official and individual capacities. As set forth above, the Eleventh Amendment bars claims for damages by private parties against employees of a state sued in their official capacities. Accordingly, Plaintiff's monetary damages claims against Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed.

**B.     Religious Diet**

When faced with both First Amendment and RLUIPA claims, the threshold inquiry is whether the prison has substantially burdened a prisoner's ability to practice religion. *Morris v. Morrison*, 486 Fed.Appx. 615 (8th Cir. 2012) (citing *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 832-33 (8th Cir. 2009)). To constitute a substantial burden, a government policy or action must significantly inhibit or constrain religious conduct or expression, meaningfully curtail a person's ability to express adherence to his faith, or deny him reasonable opportunities to engage in activities fundamental to his religion. *Id.*

Plaintiff's claim that he has been denied a religious diet has four components: (1) Defendants denied his request for a diet that complies with the Word of Wisdom; (2) Defendants refuse to inform him of which canteen items comply with the Word of Wisdom; (3) Defendants refuse to give him advance notice of what menu items comply with the Word of Wisdom; and (4) Defendants refuse to provide him with extra food on the evening of the one day per month he chooses to fast. (Filing No. 1 at CM/ECF p. 24.) With respect to the first three components, Plaintiff does not clearly allege how Defendants are failing to provide him with a diet that meets his religious diet needs. The Word of Wisdom states that Plaintiff may not consume alcohol, tobacco, tea, or coffee, and that he should avoid "anything harmful." (*See* Filing No. 1-1 at CM/ECF p. 14.) Plaintiff does not allege that Defendants *force* him to consume alcohol, tobacco, tea, or coffee. Rather, he alleges that, *at times*, some of the food he receives from the cafeteria and canteen makes him feel "sick and/or drugged," in violation of the Word of Wisdom. (Filing No. 1-4 at CM/ECF pp.

6

131-132.) In addition, a specific food item may make him feel sick one day, but not another day. (*See* Filing No. 1-4 at CM/ECF p. 132 ("At times I can eat a specific food item without incident, while at other times I will feel sick and/or drugged afterwards in violation of my Word of Wisdom Religious Diet Needs [] [a]fter eating the exact same food item served on a different food tray[] on different days of the Menu cycle").) Finally, Plaintiff states that he must rely on his own senses in order to determine which foods violate the Word of Wisdom. ("All I can do is try to determine based on past experiences and smell, taste, feel, and sight if a food item served to me violates my Word of Wisdom Religious Diet Needs and will cause me to feel sick and/or drugged.") (Filing No. 1-4 at CM/ECF p. 131.)

Here, it appears that whether or not a food violates Plaintiff's religious diet depends on how the food makes him *feel* after he eats it. Thus, with respect to this issue, the court finds that Plaintiff has failed to state a claim upon which relief may be granted. Defendants cannot possibly be expected to craft a religious diet based on Plaintiff's subjective impression of how some foods make him feel some of the time.

With respect to Plaintiff's claim regarding his ability to fast, Plaintiff alleges that fasting is a religious dietary requirement of his faith. (Filing No. 1 at CM/ECF p. 25.) In order to accommodate Plaintiff's observance of "fast Sunday," Plaintiff asked prison officials to provide him with additional food at dinner on the Sunday he chooses to fast so that he can "maintain[] his daily nutritional needs for the fast day." (Filing No. 1 at CM/ECF p. 8.) However, Plaintiff fails to allege how Defendants' refusal to provide him extra food on "fast Sunday," which occurs only one day per month, substantially burdens his ability to practice his religion. It is clear from Plaintiff's allegations that Defendants are not stopping him from fasting; he is free to fast whenever he wishes. Rather, Plaintiff's complaint is that Defendants will not provide him with extra food on the Sunday he chooses to fast. Plaintiff has failed to explain how this denial of extra food significantly inhibits or constrains his religious conduct or expression or meaningfully curtails his ability to express adherence to his faith.

7

On the court's own motion, Plaintiff shall have an opportunity to file an amended complaint that states a claim upon which relief may be granted. Plaintiff's amended complaint must allege that Defendants have substantially burdened Plaintiff's ability to practice his religion, and must allege specific facts sufficient to state a claim.

C.     **Equal Protection**

In order to establish an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a "fundamental right." *Patel v. United States Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). Religion is a suspect classification. *Id.* at 816.

Here, Plaintiff alleges that his religious diet requests are treated differently than other inmate's religious diet requests. (Filing No. 1 at CM/ECF p. 26.) However, his allegations are wholly conclusory and do not set forth any specific facts about how his requests are treated differently. In addition, Plaintiff does not identify similarly-situated inmates who receive more favorable treatment. For example, Plaintiff does not allege that inmates of another religion are provided a fasting meal, and he is not. On the court's own motion, Plaintiff shall have an opportunity to file an amended complaint that states an equal protection claim upon which relief may be granted. Plaintiff's amended complaint must clearly allege that Defendants have treated Plaintiff differently than similarly-situated inmates, and must allege specific facts sufficient to state a claim.

D.     **Adequate Nutrition**

Prisoners have a right to adequate nutrition and the failure to provide adequate nutrition may qualify as a deliberate indifference that violates the Eighth Amendment. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A prisoner must show that

"the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id.*

Plaintiff alleges that the food he receives at LCC makes him feel "sick" and "drugged," that he is not receiving adequate nutrition, and as a result he has lost in excess of 60 pounds in the last five years. (Filing No. 1 at CM/ECF pp. 20-21.) Plaintiff alleges that the following individuals have deprived him of nutritionally adequate food: Mario Peart, Diane Sabatka-Rine, Robert Houston, Janet Boyer, Charles Glenn, Unkown Dana, Unknown Dorton, Salvador Cruz, Robert Madsen, and Frank Hopkins. Liberally construed, the court finds that Plaintiff's allegations are sufficient to nudge his Eighth Amendment claim across the line from conceivable to plausible. The court cautions Plaintiff that this is only a preliminary determination based on the allegations of the Complaint and is not a determination of the merits of Plaintiff's claims or the potential defenses thereto.

### IV. Motion to Appoint Counsel

Plaintiff has filed a Motion to Appoint Counsel (Filing No. 4.) However, the court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel. . . . The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel . . . ." *Id.* (quotation and citation omitted). No such benefit is apparent here. Thus, the request for the appointment of counsel is denied without prejudice to reassertion.

### V. Motion for Discovery

Plaintiff has filed a Motion for Discovery (Filing No. 10). Shortly after Plaintiff filed this action, the clerk's office delivered to him a copy of the court's General Order Number

9

2007-12, which states that "[n]o discovery in pro se civil cases assigned to a district judge shall take place until . . . a progression order is entered unless permitted by the court." (Filing No. 8.) Here, the court has not entered a progression order, and Plaintiff has not convinced the court that allowing the parties to engage in discovery prior to the issuance of a progression order is necessary. Therefore, Plaintiff's discovery request will be denied.

### VI. Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction requiring Defendants to (1) provide him only with alternative foods from companies that provide "food storage meals" that do not violate the Word of Wisdom; (2) never serve him food that comes from DCS, and (3) never sell him products from the LCC canteen that violate the Word of Wisdom. (Filing No. 5 at CM/ECF p. 4.) The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Plaintiff's Motion. In *Dataphase*, the court, sitting en banc, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id.* at 114; *see also Planned Parenthood v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008) (reiterating *Dataphase* factors and finding that unless implementation of state statute is at issue, "district courts should still apply the familiar 'fair chance of prevailing' test"). "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. . . ." *Dataphase*, 640 F.2d at 113.

As set forth above, Plaintiff has not alleged a plausible cause of action related to his "Word of Wisdom" religious diet needs. In light of this, and in balancing all of the factors, it is apparent that Plaintiff has not alleged, or submitted any evidence showing, that there is a fair chance that he will succeed on the merits of his claims. As such, at this point in the proceedings and in consideration of all of the factors, the court sees no reason to "intervene . . . until the merits are determined . . . " *Dataphase*, 640 F.2d at 113.

IT IS THEREFORE ORDERED that:

1. Plaintiff has failed to state a claim upon which relief may be granted with respect to his First Amendment, RLUIPA, and equal protection claims. However, on the court's own motion, he shall have 30 days from the date of this Memorandum and Order to file an amended complaint in accordance with this Memorandum and Order. Any amended complaint must restate the allegations of the current complaint and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims.

2. If Plaintiff fails to file an amended complaint, this matter will proceed only as to Plaintiff's inadequate-nutrition claims.

3. The clerk's office is directed to set a pro se case management deadline in this case using the following text: Check for amended complaint on June 27, 2013, and allow only inadequate-nutrition claims to proceed to service if none filed.

4. Plaintiff's monetary damages claims against Defendants in their official capacities are dismissed.

5. Plaintiff's Motion to Appoint Counsel (Filing No. 4) is denied.

6. Plaintiff's Motion for Discovery (Filing No. 10) is denied.

7.      Defendant's Motion for Preliminary Injunction (Filing No. 5) is denied.

DATED this 28th day of May, 2013.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.